O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| GABRIELLA M. FIELDS, | Case No. SA CV 14-1592-KES |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Respondent. | |

Plaintiff Gabriella M. Fields appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Court concludes that the ALJ provided specific and legitimate reasons for rejecting the findings of Plaintiff's treating doctor; substantial evidence supports the determination that Plaintiff's impairments did not meet a Listing; the ALJ gave clear and convincing reasons for discounting Plaintiff's credibility; and substantial evidence supports the ALJ's conclusion that Plaintiff could perform her past relevant work. The ALJ's decision is therefore affirmed.

///

# I.

# BACKGROUND

In January or March 2011, Plaintiff filed an application for DIB, alleging disability beginning in January 2009 because of heart problems, ankylosing spondylitis, and a positive result on a test for human leukocyte antigen B27 ("HLA-B27").[1] Administrative Record ("AR") 12 [referencing January application date], 206-09 [application dated March 29, 2011]. Plaintiff thereafter amended her disability onset date, first to April 2009 and then to June 2010. AR 210-11, 216. On March 11, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE") and a medical expert ("ME"). AR 30-56.

On March 28, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 12-23. The ALJ found that Plaintiff had the severe impairments of: "ankylosing spondylitis; sacroiliac joint dysfunction; lumbar facet arthropathy; asthma; and migraines." AR 14. The ALJ concluded that, notwithstanding her impairments, Plaintiff retained the ability to perform

---

[1] Plaintiff alleged that her blood tested positive for HLA-B27, see AR 328, a protein that is found on the surface of white blood cells and whose presence "suggests a greater-than-average risk for developing or having certain autoimmune disorders," HLA-B27 Antigen, MedlinePlus, https://www.nlm.nih.gov/medlineplus/ency/article/003551.htm (last updated May 5, 2013). An abnormal test result may be caused by ankylosing spondylitis, which is a long-term type of arthritis that most commonly affects the bones and joints at the base of the spine where it connects with the pelvis. Id.; Ankylosing Spondylitis, MedlinePlus, https://www.nlm.nih.gov/medlineplus/ency/article/000420.htm (last updated Jan. 20, 2015). The two joints where the spine and pelvis connect are called sacroiliac joints or SI joints, and an inflammation of one or both of these joints is called sacroiliitis. See http://www.mayoclinic.org/diseases-conditions/sacroiliitis/home/ovc-20166357.

2

sedentary work with additional limitations:

> [She] can only stand and/or walk for one hour per eight-hour workday; has an unlimited ability to sit; cannot climb ladders, ropes or scaffolds but can occasionally climb stairs; can occasionally balance, stoop, kneel, crouch and crawl; and must avoid concentrated exposure to pulmonary irritants.

AR 15-16. Based on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a loan officer, loan-approval clerk, and receptionist. AR 23. The ALJ thus found Plaintiff not disabled. Id. The Appeals Council denied Plaintiff's request for review, and this action followed. AR 1-5.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ erred in:

(1) discounting the opinion of treating rheumatologist David Wallace in favor of those of ME John Morse and state-agency physician Nancy Armstrong;

(2) finding that Plaintiff's impairments did not meet a Listing;

(3) evaluating Plaintiff's credibility; and

(4) finding that Plaintiff could perform her past relevant work.

See Joint Stipulation ("JS") at 4.

## III.

## DISCUSSION

**A.    The ALJ Gave Specific and Legitimate Reasons For Crediting the Opinions of Drs. Morse and Armstrong Over That of Dr. Wallace.**

**1.    Relevant Background**

Dr. Wallace began treating Plaintiff on April 1, 2009. AR 328. Plaintiff

reported that she had had back pain since she was 19[2] and was HLA-B27-positive. Id. She had been given sulfasalazine, prednisone, and Enbrel shots. Id. Upon examination, Dr. Wallace noted minimal synovitis in Plaintiff's metacarpophalangeal joints, tenderness in her sacroiliac joints, and "a fair amount of discomfort" with neck motion, but Plaintiff had full range of neck motion and was neurologically intact. Id. Pelvic x-rays showed "classic sacroiliitis with good hips." Id. Neck x-rays were normal. Id. Plaintiff was given a shot of Humira. Id.

At an April 7, 2009 follow-up visit to Dr. Wallace, Plaintiff reported that the Humira was "spectacular." AR 330. On April 16 and May 14, she again reported that she felt much better with Humira. Id. On July 23, she reported that she had missed her Humira dose and symptoms had flared. Id. On September 11, she reported that her pain was moderate and she was generally comfortable, but the Humira helped for only a few days. Id. She received another Humira shot and a Kenalog shot in October. AR 329. She did not return until April 2010, at which point she reported that "insurance issues" had prevented an earlier visit but that she had been to the emergency room with severe pain. Id. She had sacroiliitis and pleuritic pain but no synovitis. Id. She was given Humira and Kenalog. Id. At a May 20, 2010 follow-up appointment, Plaintiff reported that the shots were "very helpful," but she still had "significant discomfort." Id. She was given Kenalog. Id.

On January 4, 2011, Plaintiff was admitted for treatment of severe right sciatic pain, diarrhea, nausea, and vomiting. AR 361. She was diagnosed with lumbar radiculopathy, right-sided sciatica, pyelonephritis, malnutrition, dehydration and pregnancy. AR 362-63. She reported to rheumatologist

---

[2] Plaintiff's date of birth is March 22, 1971, making her presently 44 years old.  AR 206.

Madhavi Siddhanthi that she had back pain with radiation into her right leg and had previously experienced significant improvement in her symptoms with Humira. AR 346. Dr. Siddhanthi noted exquisite tenderness near the sciatic notch and over the right sacroiliac joint and a positive straight-leg test at 30 degrees, but she noted a benign neurological examination, no synovitis, and good range of motion. AR 347-48. Dr. Siddhanthi discussed the case with Dr. Wallace, ordered injections to Plaintiff's right piriformis muscle and sciatic notch, and planned to resume Plaintiff's Humira therapy after treatment for pyelonephritis. Id. Plaintiff was discharged in good condition on January 8. AR 361-63.

On January 10, 2011, Plaintiff was evaluated by obstetrician Dotun Ogunyemi, to whom Plaintiff reported that her back pain had been well controlled with Humira. AR 367-68. Based upon examination of Plaintiff and review of her records, Dr. Ogunyemi opined that Plaintiff likely had spondyloarthropathy, which he noted could be aggravated by pregnancy but generally improved after delivery. AR 368. Plaintiff gave birth in June 2011, after which she resumed treatment with Humira. AR 549-50.

On August 23, 2011, state-agency internist Nancy Armstrong reviewed Plaintiff's records and opined that she could lift 10 pounds frequently, stand or walk for two hours in an eight-hour day, and sit for six. AR 538. She could frequently stoop and occasionally balance, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds. AR 540. Dr. Armstrong found no other limitations.

On September 28, 2011, Plaintiff underwent a urogynecology consultation with Dr. Cynthia Hall, at which Plaintiff reported pain in her lower back, among other issues. AR 544. Dr. Hall examined Plaintiff and referred her to a hernia specialist, neurosurgeon, and physical therapist. AR 544-45. It is unclear whether Plaintiff pursued these referrals.

5

1   On October 3, Plaintiff was evaluated by neurosurgeon Marshall Grode
2   for low-back pain. AR 546-48. Dr. Grode could not determine the etiology of
3   her pain but did not believe it was a neurosurgical issue and referred her for
4   pain management, therapy, and "conservative care." AR 546.

5   On October 7, 2011, Plaintiff sought emergency treatment for back pain
6   and was seen by rheumatologist Rajbir Gulati. AR 553. Dr. Gulati noted some
7   tenderness on examination but otherwise noted few abnormalities. AR 554. He
8   reported a normal peripheral-joint exam, no synovitis, and normal range of
9   motion. Id. Flexion, abduction, and external-rotation testing of Plaintiff's hips
10  was negative; straight-leg-raise test was negative; Plaintiff could move both legs
11  without problems; and her strength and sensation were intact in all extremities.
12  Id. Dr. Gulati noted that a September 2010 x-ray of Plaintiff's lumbar spine
13  was normal and that a January 2011 MRI showed some reduction in her L5-S1
14  disc height but normal signal, no disc bulge, no herniation, no central-canal
15  stenosis, and no sacroiliitis. Id. Dr. Gulati concluded that Plaintiff's symptoms
16  from ankylosing spondylitis were controlled by Humira and found no basis for
17  her pain. AR 554-55. He ordered additional MRIs and suggested that Plaintiff
18  follow up with a pain-management specialist. AR 555.

19  On October 10 and December 16, 2011, Plaintiff received sacroiliac-joint
20  injections, which lessened her pain. AR 636-37.

21  On February 27, 2012, Plaintiff sought emergency treatment for low-
22  back pain. AR 658. She was given Dilaudid. AR 659. Dr. Wallace was
23  consulted and recommended a sacroiliac-joint injection, which did not relieve
24  her pain. AR 659, 665. Plaintiff was admitted, her symptoms responded to IV
25  pain medication and hydration, and she was walking and in stable condition
26  when discharged on February 29. AR 665.

27  On April 15, 2012, Plaintiff was admitted after seeking emergency
28  treatment of low-back pain. AR 812. Internist Hany Bashandy noted Plaintiff's

6

history of ankylosing spondylitis, chronic pain, and opiate dependence. Id. Plaintiff was given a steroid injection, Percocet, and Fioricet, after which she reported that her symptoms had improved and was discharged. AR 812-13.

On May 10, 2012, Plaintiff sought emergency treatment for back pain. AR 667. She requested a joint injection and described her pain as "different" than before, noting that it included her lumbar spine and affected her ability to walk and complete activities of daily living. AR 673. A lumbar MRI revealed only minimal disc desiccation and no active inflammation. AR 682, 712. An MRI of Plaintiff's sacrum showed no active sacroiliitis. AR 682, 714. Dr. Wallace's treatment notes reported that she was "on a significant amount of hydrocodone and is experiencing withdrawal pain and escalating needs." AR 683. On May 11, rheumatologist Michael Weisman noted that MRI results showed no active inflammation and that Plaintiff's pain was "more consistent with narcotics withdrawal." AR 783. He advised restarting Humira and advised against a steroid injection, given the lack of objective findings. AR 784. On May 12, Plaintiff reported that she no longer had severe pain. AR 693. She was noted to have a strong and stable gait upon discharge. Id.

On June 11, 2012, Plaintiff sought emergency treatment of low-back pain that was unrelieved by taking morphine tablets she already had. AR 785. She also reported migraines and neck pain. After discussing her case with colleagues of Dr. Wallace and endocrinologist Susan Pekarovics and noting the lack of significant findings upon evaluation, examining doctor Kenneth Corre expressed concern about "opiate-seeking" behavior. AR 787. She received a steroid injection. AR 801.

On June 24, Plaintiff was admitted with complaints of back pain. AR 1000. After treatment with Dilaudid and fentanyl, Plaintiff left against medical advice. AR 1000-01.

On August 31, 2012, Plaintiff was admitted for treatment of low-back

7

and hip pain. AR 1216. An MRI of her spine showed mild degenerative changes but no significant abnormalities. AR 1157. A CT scan of her abdomen and pelvis showed no significant abnormalities. AR 1155. Dr. Richard Meis concluded that her pain was likely secondary to sacroiliitis related to ankylosing spondylitis and started Plaintiff on Dilaudid. AR 1217.  Treatment records reflect concerns regarding Plaintiff's narcotic dependence and poor nutrition. AR 1176. After her pain stabilized, Plaintiff was discharged on September 2. AR 1173, 1225.

On October 12, 2012, Dr. Wallace completed a one-page form entitled "Residual Functional Capacity." AR 808. For the categories "Sit," "Stand," "Lift," "Fine Manipulation," and "Gross Manipulation," he checked the space next to "Category IV," which the form defined as "Precludes performance for 20% or more of an 8-hour workday." Id. He indicated that Plaintiff was capable of "< 10" "Keyboard minutes per hour." Id. Dr. Wallace placed further check-marks to indicate that because of her impairments, Plaintiff would be off task 5% of the time; miss five or more days of work a month; be unable to complete seven or more workdays a month; and would perform at less than 50% of the efficiency of the average worker. Id.

At the March 11, 2013 hearing, internist ME Dr. Morse testified that Plaintiff's records revealed a primary impairment of ankylosing spondylitis, with symptoms of back pain and sacroiliitis. AR 35-36. He noted that her records showed no active inflammation or change in her condition and that her symptoms may have been attributable to narcotics withdrawal. AR 37. Dr. Morse opined that Plaintiff could perform the activities identified in the August 2011 RFC completed by Dr. Armstrong – namely, lift 10 pounds frequently, stand or walk for two hours in an eight-hour day, and sit for six. Id. (citing AR 537-43). Plaintiff could occasionally use ramps or stairs, kneel, crouch, stoop, and crawl. Id.

Upon further questioning by Plaintiff's counsel, Dr. Morse testified that recent MRIs showed no major change, active inflammation, or progression of Plaintiff's ankylosing spondylitis. AR 40. He noted that examination results noted pain but were otherwise nonspecific, and neurologic function was consistently noted to be normal. Id. There were no structural spinal issues to which Plaintiff's pain could be attributed, which led Dr. Morse to suspect it was caused by narcotics dependence and withdrawal. Id.

### 2.     Applicable Law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id. When a treating or examining physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Lester, 81 F.3d at 830. When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id. An ALJ need not accept the opinion of any physician, however, if it is brief, conclusory, and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The weight given a physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 404.1527(c)(3)-(6).

### 3.     Analysis

The ALJ gave specific and legitimate reasons for discounting

Dr. Wallace's October 2012 RFC assessment. She noted that Dr. Wallace provided no explanation for his opinion. AR 21; see Thomas, 278 F.3d at 957; accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). For instance, Dr. Wallace did not identify Plaintiff's impairments, state how those impairments limited her workplace functioning, or point to symptoms, signs, laboratory findings, or clinical observations that supported his opinion. AR 21; see 20 C.F.R. § 404.1508 ("impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings"); Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (rejecting opinion from treating doctor that did not identify claimant's impairments and disclosed no objective medical findings). The ALJ noted that Dr. Wallace's opinion was vague, consisting of check-marks to indicate that Plaintiff would be off-task or unable to work without any information to indicate how he arrived at those conclusions, nor to explain their apparent internal inconsistency. AR 21; see id. (ALJ noting apparent inconsistency between being "off task" up to 5% of the time but unable to work 20% of the time); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ properly rejected physician's opinion when it was conclusory and unsubstantiated by relevant medical documentation); Garcia v. Colvin, No. 13-0380, 2013 WL 5966354, at *2 (C.D. Cal. Nov. 7, 2013) (holding that ALJ properly discounted medical opinion on basis that doctor did not identify specific findings to support alleged functional limitations); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions").

The ALJ further noted that Dr. Wallace's opinion was inconsistent with his own treatment notes and the other evidence of record.[3] AR 21. As is

---

[3] Plaintiff contends that the ALJ erred to the extent she found Dr.

evident from the ALJ's detailed treatment of the medical evidence, including notes reflecting treatment by or consultation with Dr. Wallace, Plaintiff's back pain was well controlled with Humira until her 2011 pregnancy. AR 20, 329-30, 346, 367-68, 554-55. Since then, she had sought treatment at the emergency room for occasional exacerbation of her back pain, which responded to pain medication. AR 20, 361-63, 665, 693, 812-13, 1225; see Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [federal disability] benefits."). Her complaints had often been noted to be out of proportion with objective findings, which were minimal, with no impairment of strength or gait, no restriction in range of motion, no neurological abnormalities, and only minor findings on MRIs and x-rays. AR 20, 328, 347-48, 546-48, 554-55, 682, 712, 714, 787, 1155, 1157. Dr. Wallace and some examining doctors suspected that her pain was attributable to opiate dependence and withdrawal. AR 20, 683, 783, 787, 812, 1176. No treating or examining doctor other than Dr. Wallace indicated that Plaintiff had functional limitations or should restrict her activities. AR 20.[4]

---

Wallace's opinion inconsistent with his treatment notes because they reflected no finding that Plaintiff was unable to work. JS at 8; AR 20. Contrary to Plaintiff's contention, medical records frequently note that a patient is unable to work, particularly when she is limited by the very impairment for which she seeks treatment. In any event, as the ALJ noted, nothing in Dr. Wallace's treatment notes provided any basis for the severe limitations identified in his questionnaire.  Moreover, although Plaintiff contends that her employment records confirm that she was not working, that does not show that she could not work.

[4] Plaintiff contends that the ALJ mischaracterized or omitted certain pieces of evidence. See JS at 5, 8-18. The ALJ was not obligated to address every piece of evidence, Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), and in any event, Plaintiff does not point to any

That Dr. Wallace's opinion was unsupported by his own treatment notes and inconsistent with the other medical evidence were both specific, legitimate bases upon which to discount his opinion. See 20 C.F.R. § 404.1527(c)(3), (4) (greater weight given to medical opinions that are well explained, supported by medical evidence, and consistent with the record); Valentine v. Comm'r  Soc. Sec. Admin. , 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between treating physician's opinion and his treatment notes constituted specific and legitimate reason for rejecting his opinion); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted medical opinions that were "internally inconsistent, unsupported by [the doctor's] own treatment records or clinical findings, [and] inconsistent with the record as a whole"); Rincon v. Colvin, No. 12-10583, 2014 WL 32114, at *2 (C.D. Cal. Jan. 3, 2014) (finding ALJ properly discounted doctor's opinion that was inconsistent with her clinical findings and those of other examining doctors).

Moreover, the ALJ was entitled to rely on the opinions of Drs. Morse and Armstrong, both of whom were experts in applying the Social Security regulations. See 20 C.F.R. § 404.1527(e)(2)(ii) (noting import of agency physicians' expertise in Social Security rules). Dr. Morse reviewed all of Plaintiff's medical evidence and heard her testimony and found no reason to impose greater limitations than those opined by Dr. Armstrong. See AR 35. Dr. Morse was examined by Plaintiff's counsel, and provided further explanation for his opinion, including that recent imaging showed no progression of Plaintiff's ankylosing spondylitis, examination results were nonspecific, and neurological examinations were consistently normal. AR 40;

significant medical evidence that the ALJ misconstrued or overlooked.

12

see <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1042 (9th Cir. 1995) (greater weight may be given to nonexamining doctors who are subject to examination). There were no structural spinal issues to which her pain could be attributed, which led Dr. Morse to suspect it was caused by narcotics dependence and withdrawal. AR 40. The ALJ found that Dr. Morse's opinion was well-explained and consistent with the medical evidence as a whole. <u>See</u> AR 21; <u>compare</u> AR 20 (ALJ's summary of evidence) <u>with</u> AR 21 (ALJ's summary of Dr. Morse's opinion); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); 20 C.F.R. § 404.1527(c)(3), (4) (in determining what weight to give medical opinion, ALJ may consider whether it is well supported and consistent with record as a whole).

Plaintiff contends that the ALJ erred in rejecting the opinion of a rheumatologist who had treated Plaintiff for three years (*i.e.*, Dr. Wallace) and instead relying on the opinion of Dr. Armstrong, who was not a specialist, reviewed only some of Plaintiff's records, and, like Dr. Wallace, completed a check-off form. JS at 6-7. Unlike Dr. Wallace, Dr. Armstrong did state the basis for her findings. <u>See</u> AR 538-39. Moreover, Dr. Morse, upon review of all of the evidence, confirmed Dr. Armstrong's findings. AR 37; <u>cf.</u> <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding RFC determination when ALJ relied on state-agency physician's opinion over that of treating physician).

It is the sole province of the ALJ to resolve conflicts in the medical-opinion evidence. <u>Andrews</u>, 53 F.3d at 1041. She provided specific and legitimate reasons for discounting the opinion of Dr. Wallace in favor of those of Drs. Morse and Armstrong, which the ALJ found to be more consistent with the evidence as a whole.

**B.    Substantial Evidence Supports the ALJ's Conclusion That Plaintiff's Impairments Did Not Meet a Listing.**

Plaintiff contends that the ALJ erred in finding that Plaintiff's ankylosing spondylitis did not meet Listings 1.02, 1.04, and 14.09(D). JS at 34.

**1.    Applicable Law**

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal a Listing. See § 404.1520(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828.

The claimant has the initial burden of proving that an impairment meets or equals a Listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett, 180 F.3d at 1099. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Id. (quoting 20 C.F.R. § 404.1526). Medical equivalence, moreover, "must be based on medical findings;" "[a] generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)

(finding that ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not satisfy Listing). Moreover, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (citing Lewis, 236 F.3d at 514).

An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence." See Warre, 439 F.3d at 1006. Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation marks omitted). When evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion as long as substantial evidence supported it. Id.

**2.     Listing 1.02**

Listing 1.02 applies to "[m]ajor dysfunction of a joint(s) . . . [c]haracterized by gross anatomical deformity," including bony or fibrous ankylosis, "and chronic joint pain and stiffness with signs of limitation of motion" and "joint space narrowing, bony destruction, or ankyloses." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02. To meet Listing 1.02, a claimant must also show either (a) involvement of a major weight-bearing joint resulting in inability to ambulate effectively or (b) involvement of one major upper-extremity joint resulting in inability to perform fine and gross movements effectively. Id.

The ALJ found that Plaintiff's impairments did not meet or equal Listing 1.02 because she proffered no evidence of gross anatomical deformity, chronic joint pain and stiffness, limitation of motion, inability to ambulate effectively,

15

and inability to perform fine and gross movements effectively. AR 15. Plaintiff does not contend that she presented any evidence of gross anatomical deformity. See JS at 34. Rather, as the ALJ found, imaging of Plaintiff's spine and hips consistently showed minimal objective findings. AR 20; see AR 328, 554, 682, 712, 714, 783, 787, 1155, 1157. Although Plaintiff contends that the record contains evidence of chronic joint pain and stiffness, involvement of her hips, and inability to ambulate effectively, she points to no such evidence. In fact, as noted above, the records showed that Plaintiff sought treatment for occasional exacerbation of pain in her low back and hips, that pain was treated effectively with medication, and Plaintiff was able to walk upon discharge. See supra Section III.A.1.

Thus, substantial evidence supports the ALJ's finding that Plaintiff's impairments neither met nor equaled Listing 1.02.

### 3.     Listing 1.04

Listing 1.04 applies to "[d]isorders of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04. The ALJ noted that there was no evidence of compromise of a nerve root or the spinal cord. AR 15. Plaintiff contends that the record is "sufficient to establish compromise of areas in her spine where inflammation has caused soft tissue (ligaments and tendons) to erode," JS at 34, but she points to no such evidence. In fact, although certain doctors suspected sacroiliitis, imaging showed no active inflammation, and examination consistently confirmed intact strength and sensation and normal neurologic function. See AR 328, 347-48, 554, 682, 712, 714, 1155, 1157.

Thus, substantial evidence supports the ALJ's finding that Plaintiff's impairments neither met nor equaled Listing 1.04.

### 4.     Listing 14.09(D)

Listing 14.09(D) applies to "[r]epeated manifestations of inflammatory

16

arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)" and "marked" limitation in activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. pt. 404, supbt. P, app. 1 § 14.09(D).

The ALJ found that although Plaintiff had sought treatment for back pain on multiple occasions, signs and symptoms of inflammatory arthritis were noted only infrequently. AR 15. Plaintiff contends that this is incorrect, noting that Plaintiff was repeatedly diagnosed with ankylosing spondylitis. JS at 35. But that diagnosis was based, in part, on a blood test, and examination and imaging repeatedly produced minimal findings.

The ALJ also noted that Plaintiff's treatment records did not mention fatigue, malaise, or involuntary weight loss, and although Plaintiff sometimes complained of a low-grade fever, it was seldom noted on examination. AR 15. Plaintiff again contends that the ALJ's characterization of the record was inaccurate, but she points to no specific evidence of record to support her contention. JS at 35.

The ALJ also found no evidence in the record to support marked limitations in Plaintiff's ability to perform daily activities, maintain social functioning, or timely complete tasks. AR 15; see infra Section V.C. The ALJ noted that although Plaintiff had occasional difficulty with household tasks, she was generally able to care for herself, her two young children, and her home in a satisfactory manner. Id. Plaintiff contends that the medical records corroborate her claim of marked limitation in daily activities, but points to no such records. JS at 35. Rather, as discussed below, the ALJ gave clear and convincing reasons for discounting the credibility of Plaintiff's claims of disabling limitations. See infra Section V.C.

Finally, the ALJ noted Dr. Morse's testimony that Plaintiff's

17

impairments did not meet a Listing. AR 15; see AR 36. As explained above, the ALJ was entitled to rely on the opinion of the medical expert.

Substantial evidence supports the ALJ's finding that Plaintiff's impairments neither met nor equaled Listing 14.09(D).

Remand is not warranted on this basis.

**C.    The ALJ Gave Clear and Convincing Reasons For Discounting Plaintiff's Credibility.**

Plaintiff contends that the ALJ erred in assessing her credibility. JS at 39-44.

### 1.    Applicable Law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1036 (internal quotation marks omitted). If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996); see Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

18

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in her statements or between her statements and her conduct. Id. at 1284; Thomas, 278 F.3d at 958-59. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681.

### 2.    Analysis

The ALJ gave clear and convincing reasons for discounting Plaintiff's credibility.

The ALJ found that Plaintiff's allegations were not fully consistent with the medical evidence. AR 16, 21. For instance, the ALJ noted that although Plaintiff testified that she suffered migraine headaches three to five times a month that lasted two or three days, the medical evidence contained only occasional references to migraines and no indication they kept her bedridden for several days a month. AR 21-22, 41. Although Plaintiff notes that she was prescribed medication to treat her migraines, JS at 41, that does not undermine the ALJ's finding that Plaintiff rarely sought treatment for them, suggesting that they were not disabling as she alleged.

19

1        Plaintiff said that between 20 and 25 times a month (*i.e.*, nearly every

2   day), she suffered back pain which was a "10" out of 10 and required

3   emergency treatment, but the record showed that she sought treatment only

4   twelve times between June 2010 and September 2012. AR 22, 45. The ALJ

5   also noted that when Plaintiff sought care for low-back pain, she often reported

6   that she had been fine until shortly before her visit, suggesting that her pain

7   was not severe on a constant basis. AR 22; see AR 546 (noting that Plaintiff's

8   intermittent pain became more severe several days earlier), 812 (noting that

9   severe pain began day before Plaintiff's visit), 1216 (noting that Plaintiff "had

10  been doing well until 3 days ago").[5] Although an ALJ may not disregard a

11  claimant's subjective symptom testimony solely because it is not substantiated

12  affirmatively by objective medical evidence, see Bunnell, 947 F.2d at 346-47;

13  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006), she may use

14  the consistency with medical evidence in the record as one factor in the

15  evaluation, see Burch, 400 F.3d at 681 ("Although lack of medical evidence

16  cannot form the sole basis for discounting pain testimony, it is a factor that the

17

18       [5] The ALJ also noted that Plaintiff's testimony that she could not lift her

19  baby was contradicted by her reports to treating physicians that she did. AR

20  22; see AR 43, 282, 810. Plaintiff contends that her records reflect that she

    could lift her child when the baby was only 10 months old but could not do so

21  six months later. JS at 41 (citing AR 282, 810). The record Plaintiff cites to

22  support her claim that in October 2011, she "told her doctors she could no

23  longer lift her baby, then 16 months old," is Plaintiff's Disability Report to the

    agency, not a treatment record. Moreover, although the child's increasing

24  weight could explain Plaintiff's later inability to lift her, the ALJ credited

25  Plaintiff's claim that she could not lift heavy objects, and the RFC requires that

26  Plaintiff lift no more than 10 pounds. Further, even if the ALJ erred in relying

    on this particular inconsistency in Plaintiff's statements, because the ALJ cited

27  other clear and convincing reasons for discounting Plaintiff's credibility, any

    error was harmless. See Carmickle, 533 F.3d at 1163.

28

ALJ can consider in his credibility analysis."); <u>Carmickle</u>, 533 F.3d at 1161 ("Contradiction with the medical record, however, is a sufficient basis for rejecting the claimant's subjective testimony."); <u>Lingenfelter</u>, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence"). Here, the ALJ properly noted the inconsistencies between Plaintiff's medical records and her allegations of disabling back pain in assessing her credibility.

The ALJ also noted inconsistencies in Plaintiff's statements about her daily activities. AR 22. Plaintiff testified that she never went grocery shopping or cooked but had previously stated that she made breakfast, lunch, and dinner daily and shopped for groceries weekly. AR 22; <u>see</u> AR 257, 259. Plaintiff testified that she drove only once a week but had previously stated that she drove her daughter to and from school almost daily. AR 22; <u>see</u> AR 265. Although Plaintiff contends that these inconsistencies were explained by her increased pain, the ALJ found no evidence of worsening impairments in the medical evidence; Plaintiff's most recent records showed no active inflammation and minimal objective findings. AR 19-20; <u>see</u> AR 554-55, 712, 714, 783, 1155, 1157. The ALJ was entitled to consider Plaintiff's inconsistent statements in assessing Plaintiff's credibility, and the ALJ's assessment is entitled to great weight. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that ALJ may consider many factors in weighing a claimant's credibility, including "ordinary techniques of credibility evaluation, such as . . . inconsistent statements concerning the symptoms . . . and . . . the claimant's daily activities"); <u>Weetman</u>, 877 F.2d at 22.

Moreover, the ALJ noted that Plaintiff admitted to a relatively normal level of daily activity. <u>See</u> AR 22. Plaintiff stated that she could manage her personal needs, perform light household chores, and help her daughter with

homework and read to her in the evening.[6] AR 22, 257-59, 265; cf. Morgan, 169 F.3d at 600 (finding claimant's ability to fix meals, do laundry, do yardwork, and occasionally care for friend's child evidence of ability to work); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (holding that ALJ was permitted to consider that claimant "performed various household chores such as cooking, doing the dishes, going to the store, visiting relatives, and driving" in assessing credibility). Plaintiff stated that she enjoyed watching TV and talking with friends on the phone. AR 22, 266. She said that she generally finished what she started, was "great" at following instructions, got on well with others, and was able to handle stress and changes in routine. AR 22, 267-68. That Plaintiff maintained a reasonably normal level of daily activities was a clear and convincing reason to discount her credibility, even if her impairments made those activities somewhat more challenging. See Burch, 400 F.3d 681 (noting that ALJ may discredit allegations of disability on basis that claimant engages in daily activities involving skills that could be transferred to the workplace); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (same); Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Although the ALJ found Plaintiff's allegations of disabling pain to be exaggerated, the ALJ credited Plaintiff's contention that her primary

---

[6] Although Plaintiff contends that she stated that she needed help showering and needed numerous breaks for pain and fatigue, JS at 43, the cited Function Report in fact says that Plaintiff had no problem with personal care, that her impairments did not affect her ability to bathe, and that her activity was mostly limited by an inability to stand for long periods of time and lift or carry heavy objects. AR 257-59, 265, 267. The ALJ accounted for these limitations in Plaintiff's RFC.

difficulties were standing and walking for long periods of time and lifting heavy objects. AR 22; see AR 47-49, 259, 265, 267. Because Plaintiff said she had difficulty standing and lifting and estimated she could stand for only 20 minutes without a break and only an hour a day, the ALJ incorporated into Plaintiff's RFC that she could lift and carry no more than 10 pounds and stand or walk no more than one hour in an eight-hour day. See AR 47-49; cf. Carmickle, 533 F.3d at 1163 (affirming RFC when it was supported by substantial evidence, including claimant's own testimony).

On appellate review, this Court is limited to determining whether the ALJ properly identified reasons for discrediting Plaintiff's credibility. Smolen, 80 F.3d at 1284. The inconsistencies between Plaintiff's allegations and both the medical evidence and her activities were proper and sufficiently specific bases for discounting her claims of disabling symptoms, and the ALJ's reasoning was clear and convincing. See Tommasetti, 533 F.3d at 1039-40; Houghton, 493 F. App'x at 845. Because the ALJ's findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959; Fair, 885 F.2d at 604.

Remand is not warranted.

**D.   The ALJ's Finding that Plaintiff Could Perform Her Past Relevant Work Was Supported by Substantial Evidence.**

Plaintiff contends that the ALJ's RFC was not supported by substantial evidence and that the ALJ was therefore not entitled to rely upon the testimony of the VE that Plaintiff could perform her past relevant work. JS at 51.

A district court must uphold an RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical evidence in the record and

"explain in [her] decision the weight given to . . . [the] opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. § 404.1527(e)(2)(ii); see also § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In determining a claimant's RFC, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. See Bayliss, 427 F.3d at 1217; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

Plaintiff challenges the RFC only on the ground that it does not incorporate the limitations reflected in Dr. Wallace's opinion. JS at 52. As explained above, however, the ALJ gave specific and legitimate reasons for rejecting Dr. Wallace's opinion, including that it was unsupported by his own treatment notes and inconsistent with the medical evidence as a whole. See supra Section III.A. The ALJ thus properly excluded Dr. Wallace's opinion from Plaintiff's RFC. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (noting that in determining RFC, ALJ may consider those limitations for which there is support in record and need not consider properly rejected evidence or subjective complaints).

Although Plaintiff noted in her testimony that she was terminated from her last job in January 2011 for too many medical absences, JS at 52; see AR 31-32, the ALJ concluded that the record did not support Plaintiff's claim that her impairments would prevent her from working, see supra Section III.C.; Bayliss, 427 F.3d at 1217; Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir.1988) (holding that RFC excluding subjective pain limitations was

24

supported by substantial evidence when ALJ specifically discredited claimant's pain testimony). Indeed, the ALJ specifically noted that Plaintiff's records reflected less frequent treatment than she alleged. See AR 22; see also AR 21 (rejecting Dr. Wallace's finding that Plaintiff would miss significant work because of her impairments because unsupported by frequency of treatment). Moreover, January 2011 corresponds with Plaintiff's pregnancy. AR 14, 363-63. Because the ALJ set forth substantial evidence in support of her conclusion that Plaintiff was capable of performing sedentary work, remand is not warranted. Bayliss, 427 F.3d at 1217 (noting that district court must uphold RFC assessment when ALJ has applied proper legal standard and substantial evidence in record supports her conclusion); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (noting that if evidence in record as a whole "is susceptible to more than one rational interpretation, the ALJ's decision should be upheld" (internal quotation marks omitted)).

Moreover, because substantial evidence supported the ALJ's conclusion that Plaintiff could perform sedentary work with additional limitations, the ALJ was entitled to rely on the VE's response to a hypothetical that reflected that RFC. See Thomas, 278 F.3d at 956 (finding VE testimony reliable when hypothetical posed included all claimant's functional limitations). Thus, the ALJ properly relied on the VE's testimony that a person who could lift and carry 10 pounds frequently, stand or walk one hour in an eight-hour day, and sit seven hours, and who had the additional postural and environmental limitations included in Plaintiff's RFC, could perform Plaintiff's past relevant work, all of which was sedentary. See AR 15-16, 54. Plaintiff did not carry her burden to show otherwise. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing § 404.1520(e)); see also Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) (noting claimant's "burden of proving an inability to return to [her] former type of work and not just to [her] former job").

25

Remand is not warranted.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.


Dated: December 23, 2015

_Karen E. Scott_

_____

KAREN E. SCOTT
United States Magistrate Judge